IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BERNADETTE BAUTISTA and
ANIUWOLF NOHELY BAUTISTA,

    Plaintiffs,

v.                                        Civ. No. 25-775 GBW/KRS

CITY OF RUIDOSO DOWNS, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Amend. *Doc. 19*. Having reviewed the briefing and relevant law, the Court will deny the motion for the reasons stated below.

### I.    BACKGROUND

Plaintiffs filed this action in the Twelfth Judicial District Court on June 14, 2025. *Doc. 1-1*. The case was removed on August 13, 2025. *Doc. 1*. On December 22, 2025, the Court granted Defendants' motion to dismiss all claims. *Doc. 18*. The Court granted Plaintiffs thirty days to file a motion to amend. *Id*. at 20.

The proposed First Amended Civil Complaint (*doc. 19-1*) alleges many of the same facts as the original complaint (*doc. 1-1*). These are as follows. Plaintiffs own and inhabit a house in Ruidoso Downs, NM. *Doc. 19-1* at ¶ 26. On January 26, 2021, approximately one day after contractors hired by the City of Ruidoso Downs ("City")

began a project on the sewer lines, Plaintiffs' toilets began to "erupt" and overflow with sewage. *Id*. at ¶¶ 31–32. The contractors used a "jetter" to force extremely high amounts of pressure into the lines, which caused the overflow of sewage into Plaintiffs' home and blew the cap off a "cleanout" pipe in Plaintiffs' front yard, resulting in the formation of a standing pool of sewage. *Id*. at ¶¶ 32.

City employees and officials were aware of the sewage problem. On October 12, 2021, Plaintiff Bernadette went to the City office to pay a $1,700 water bill and an employee said, "Oh, I thought you'd be in here sooner." *Id*. at ¶ 42. Later that same month, Bernadette "bumped into" City Council Member Judy Miller and explained the situation, including how "the work done by SAK [the City contractor] had damaged the house." *Id*. at ¶ 43.

In March 2022, a plumber advised Plaintiffs that their sewage problems were caused by "work done to the lines" by the City, *id*. at ¶ 33, and a contractor advised Bernadette that the damage to the house was too extensive to be repaired, *id*. at ¶ 59.

Around May 2023, former City clerk Blythe Bowen overheard Director of Public Works Joey Jarvis and Director of Finance Mary Casteneda discussing how they knew the damage to Plaintiffs' home was the City's fault, but "were going to avoid and try to 'get out of' doing anything" to compensate Plaintiffs or their neighbors. *Id*. at ¶ 72. At that time, "everyone" who worked for the City knew that the work done by SAK to the sewage lines had caused the damage to Plaintiffs' home, *id*. at ¶ 73, and the City had a

"standing instruction" that if Bernadette came into the City's offices, no one was allowed to help her or give her any information, *id*. at ¶ 74. When Bowen spoke with Bernadette on the phone, Giron and Castaneda "were by her side, whispering to her what to say." *Id*. at ¶ 75.

Plaintiffs sent tort claim notices to the City on or about June 6, 2022, August 2, 2023, and August 8, 2023. *Id*. at ¶ 64. In addition, on January 11, 2023, Plaintiffs' counsel emailed the City Attorney a copy of the tort claim notice and advised him that the sewage was polluting the Ruidoso River. *Id*. at ¶ 49. On January 23, 2023, the City Attorney advised Plaintiffs' counsel that the tort claim had been turned over to the City's Risk Management and that Plaintiffs "should take whatever appropriate legal action as [sic] you desire, as this office is no longer involved." *Id*. at ¶ 50. On October 16, 2023, the City's insurer Crawford & Company ("Crawford") sent an adjuster and an engineering consultant to Plaintiffs' home. *Id*. at ¶ 55. While on site, the engineering consultant told the adjuster that the damage was "clearly" the fault of the City. *Id*. at ¶ 57. On November 27, 2023, however, Crawford denied the claim in its entirety, stating that the damage was caused by Plaintiffs' excessive water usage in February and March 2021. *Id*. at ¶ 60.

On March 23, 2024, City Councilmen Walter Baber and Terry Proctor came to Plaintiffs' home to see the sewage pool for themselves. *Id*. at ¶ 61. Councilman Baber said: "This is like that big coverup by the City with that lady who was complaining

3

about the pollution in the River . . . that it was smelling and affecting her trees." *Id*. Councilman Proctor "glare[d]" at him and he abruptly "shut up." *Id*. On multiple occasions around April 3–5, 2024, Bernadette attempted to obtain maps of the City sewer system but was told by employees that the City "does not have any maps of their municipal sewage lines." *Id*. at ¶ 54.

On May 8, 2023, when the City worked on the fire hydrants, Plaintiffs' toilets started "bubbling" again and on June 4, 2023, they "erupted." *Id*. at ¶ 51.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure allow a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Whether to grant or deny a motion to amend is "within the discretion of the trial court," *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)), but the court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). The court may deny leave if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Therefore, "[t]he

futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Id*. The complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). The court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678. The plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, and the complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *id*. at 555. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.

**III.    ANALYSIS**

The proposed First Amended Civil Complaint alleges two claims for relief: (1) Civil Conspiracy to Deprive Plaintiffs of their 5th and 14th Amendment Rights under 42 U.S.C. § 1983, brought against Defendants Holman, Miller, Walker, Romero, Giron, Jaron, and the City, and (2) Failure to Intervene to Keep Other Co-Conspirators from Engaging in a Civil Conspiracy to Deprive Plaintiffs of their 5th and 14th Amendment Rights, also under § 1983, against Defendant Lundquist. *Doc. 19-1* at 25–44. Defendants oppose amendment on the basis of undue delay and futility. *Doc. 20*.

A. <u>Construing Proposed Civil Conspiracy Claim Against Defendants Holman, Miller, Walker, Romero, Giron, Jaron, and the City</u>

The precise nature of Plaintiffs' first putative civil conspiracy claim is difficult to discern. It appears that Plaintiffs may seek to bring separate but related claims of (i) a standalone (non-conspiracy) claim under the Fifth Amendment Takings Clause; (ii) a conspiracy to violate the Fifth Amendment Takings Clause; and (iii) a conspiracy to violate the Fourteenth Amendment Due Process Clause. Given the distinctions between these possible claims, the Court will address them separately.

B. <u>Fifth Amendment</u>

The Takings Clause of the Fifth Amendment states that private property may not "be taken for public use, without just compensation." U.S. Const., amend. V. "[T]o make out a Takings Clause claim, a plaintiff must plead that: (1) something was 'taken' by the government; (2) it was 'property'; (3) it was the plaintiff's property; and (4) it was

6

taken 'for public use, without just compensation.'" *Knellinger v. Young*, 134 F.4th 1034, 1043 (10th Cir. 2025). Plaintiffs argue that Defendants took their property without just compensation when City contractors used the "jetter" on the sewage lines, causing irreparable damage to their home. *See doc. 19-1* at 27–32.

Defendants argue the Fifth Amendment claim[1] is barred by the statute of limitations. The Court agrees. Section 1983 borrows "the residual or general personal injury statute of limitations" of the forum state. *Owens v. Okure*, 488 U.S. 235, 236 (1989). The limitations period in New Mexico is three years. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014); NMSA § 37-1-8. "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it" and "may sue the government at that time in federal court." *Knick v. Twp. of Scott*, 588 U.S. 180, 189 (2019). Plaintiffs' home was damaged in January 2021, and they were aware of the cause no later than March 2022.[2] *See doc. 19-1* at ¶ 33. Accordingly, any takings claim based on the work done in January 2021[3] accrued no later than March 2022. The fact that Plaintiffs have not been compensated

---

[1] By its text, the Fifth Amendment does not apply to the state governmental bodies. Thus, it is more precise to describe this claim as brought under the Fifth Amendment as incorporated by the Fourteenth Amendment. *See Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994).

[2] In fact, based on the allegations, it appears they were aware of the cause in late October 2021, when Bernadette explained to Miller that "the work done by SAK had damaged the house." *Doc. 19-1* at ¶ 43.

[3] Plaintiffs acknowledge that the claims in the proposed First Amended Civil Complaint are based on the damage caused in January 2021, not the additional work done in 2023. *See doc. 21* at 9, 11. They seek leave to submit yet another amended complaint with claims based on City's actions in 2023. *See id.* at 11. That request is addressed below.

for the damage does not infinitely delay accrual or toll the statute of limitations, because the constitutional violation was complete at the time of the alleged taking. *See Knick*, 588 U.S. at 193 ("Compensation under the Takings Clause is a remedy for the 'constitutional violation' that 'the landowner has *already* suffered' at the time of the uncompensated taking." (quoting *San Diego Gas & Elec. Co.*, 450 U.S. 621, 654 (1981) (Brennan, J., dissenting)) (emphasis in original)).  The Court therefore finds the addition of a "straightforward" Fifth Amendment claim would be futile.

C. Conspiracy to Violate the Fifth Amendment

As noted above, the putative Count 1 is presented in terms of a conspiracy. Thus, it is clear that Plaintiffs seek to allege a conspiracy to violate their Fifth Amendment rights under the Takings Clause.  However, from a statute of limitations perspective, this claim fares no better than a non-conspiracy Fifth Amendment claim.

First, it should be understood that a civil conspiracy claim under § 1983 is less of an independent claim and more of a vehicle by which to impose liability on one defendant for the actions of another performed in the course of the conspiracy. *See, e.g., Dixon v. Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).  Consequently, for purposes of the statute of limitations, an action for civil conspiracy accrues with "each overt act that is alleged to cause damage to plaintiff." *Scherer v. Balkema*, 840 F.2d 437, 439 (7th Cir. 1988) (quoting *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986)).  As explained above, the relevant damage to Plaintiffs had been caused in January 2021 and they were

aware of its source no later than March 2022.  Therefore, Plaintiffs' putative claim of a conspiracy to violate their Fifth Amendment rights against a taking is barred by the statute of limitations.

    D.  <u>Conspiracy to Violate the Fourteenth Amendment Due Process Clause</u>

Plaintiffs allege their Fourteenth Amendment due process rights were violated by the "concerted effort by the Mayor and Officers of the City . . . to deprive Plaintiffs of any compensation for the Fifth Amendment Taking."  *Doc. 19-1* at 32.[4]  Specifically, Plaintiffs assert that Defendants conspired to deprive them of (1) "notice and a hearing" before their property was taken, and (2) "just compensation" after their property was taken.  *Doc. 19-1* at 40–41.  Defendants argue these facts do not state a claim for a due process violation.  *Doc. 20* at 9–11.  The Court agrees.

"For a valid § 1983 conspiracy claim, plaintiffs 'must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'"  *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (quoting *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990)).  "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant

---

[4] This portion of the proposed amended complaint appears to be substantially in violation of Federal Rule of Civil Procedure 10.  *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").  Therefore, the Court cites the page number and not the paragraph for identification purposes.

for the actions of another performed in the course of the conspiracy." *Dixon*, 898 F.2d at 1449 n.6 (citations omitted). The Fourteenth Amendment's Due Process Clause provides that "[n]o state . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment embodies three different protections: (1) a procedural due process protection requiring the state to provide individuals with some type of process before depriving them of their life, liberty, or property; (2) a substantive due process protection, which protects individuals from arbitrary acts that deprive them of life, liberty, or property; and (3) an incorporation of specific protections afforded by the Bill of Rights against the states." *Miller v. Campbell Cty.*, 945 F.2d 348, 352 (10th Cir. 1991). Indeed, the Supreme Court has held that the Takings Clause of the Fifth Amendment is incorporated against the states via the Fourteenth Amendment. *See Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994).

However, because the Fifth Amendment Takings Clause has been incorporated, the Tenth Circuit has held that, in cases involving alleged takings, the procedural and substantive prongs of the Fourteenth Amendment cannot form the basis of an independent claim based on the taking. As that court explained,

> Because the Just Compensation Clause of the Fifth Amendment imposes
> very specific obligations upon the government when it seeks to take
> private property, we are reluctant in the context of a factual situation that
> falls squarely within that clause to impose new and potentially
> inconsistent obligations upon the parties under the substantive or
> procedural components of the Due Process Clause. It is appropriate in

10

this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause.

*Miller*, 945 F.2d at 352.  Just as in *Miller*, Plaintiffs appear to make an independent Fourteenth Amendment claim based on the alleged taking.  Therefore, based on *Miller*, that claim must fail.

Even if the Court evaluated Plaintiffs' independent Fourteenth Amendment claim, they fail to state one that is cognizable.  First, Plaintiffs fail to state a claim with respect to the failure to provide predeprivation notice and a hearing.  There is no allegation that the City or its employees intended or planned to cause a sewage leak on Plaintiffs' property, or that this result was actually foreseen.  The Due Process Clause does not generally require predeprivation process "when a state employee negligently deprives an individual of property," as providing process before an unforeseen loss would be "impracticable."  *Hudson v. Palmer*, 468 U.S. 517, 531–32 (1984); *see also Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) (where the state "cannot predict when the loss will occur," a predeprivation hearing is "not only impracticable, but impossible" (quoting *Hudson*, 468 U.S. at 532)).  In this case, it is difficult to imagine how the City could have provided predeprivation process because the damage to Plaintiffs' property was accidental and unforeseen.  And at any rate, for the reasons explained above, any claim arising prior to January 2021 is outside the statute of limitations.  *See Varnell*, 756 F.3d at 1212.

11

Second, Plaintiffs fail to state a claim with respect to Defendants' alleged conspiracy to deny them "just compensation."  They allege this was accomplished by "directing employees not to let Bernadette speak with anyone, to make sure that no one gave Bernadette any information, and whispering into the ear of any person that was talking to Bernadette on the phone telling them what to say."  *Doc. 19-1* at 41.  Some of these acts, unlike the alleged taking, occurred within the limitations period.  *See, e.g., doc. 19-1* at ¶¶ 72–75 (describing events that took place in or around May 2023).  But Plaintiffs have identified no legal basis for the rights they claim were violated. Essentially, they allege that Defendants denied their meritorious claim and refused to provide them with additional information.  They have identified no due process right to have their claims approved, or to receive all information at the City's disposal pending litigation.  Based on the allegations, it appears the City received, investigated, and ultimately denied Plaintiffs' claim according to its procedures.  "The mere fact [their] claims were denied does not amount to the denial of due process."  *Requena*, 893 F.3d at 1213 (citing *Coburn v. Wilkinson*, 700 F. App'x 834, 837 (10th Cir. 2017)).  To the extent Plaintiffs were dissatisfied with the outcome, both state and federal law provided them with a meaningful postdeprivation remedy: filing an action in court.

The Court must clarify that it is not holding that deceitful post-taking concealment by municipal officials is never relevant to takings litigation.  For example, if officials somehow prevent citizens from learning about a taking or the municipality's

involvement in it, such facts could support an argument for equitable tolling, and perhaps even an independent due process claim.  However, Plaintiffs do not, and cannot under these facts, make such an argument.  Plaintiffs quickly knew about the damage to/taking of their home and that the apparently negligent work on the sewer lines had been at the behest of the municipality.  The municipality's resistance to paying for that damage did not conceal any material facts.  In fact, if Plaintiffs' position was accepted, it would mean that every Fifth Amendment takings claim would have an infinite statute of limitations as every one involves a failure to pay.

E.  Failure to Intervene

Finally, Plaintiffs allege a claim for "failure to intervene" against Defendant Lundquist.  *Doc. 19-1* at ¶¶ 93–100.  "A plaintiff states a constitutional violation in the form of failure to intervene by alleging that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so."  *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022).  As explained above, the Court finds Plaintiffs have failed to state a claim for any constitutional violation.  The proposed claim against Defendant Lundquist must therefore fail on the first element.

### F.  Conclusion Regarding Proposed Amended Complaint

Based on the foregoing, the Court concludes that the putative claims in the proposed First Amended Civil Complaint would be subject to dismissal.  As such, it is futile and must be denied on that basis.[5]

### G.  Request for Further Amendment

In the reply brief, Plaintiffs request leave to submit yet another proposed amended complaint, this time including claims based on the damage to their home in June 2023.  *Doc. 21* at 11.  They do not assert that the relevant facts were previously unknown or that these claims could not previously have been alleged.  The Court has already granted Plaintiffs thirty days in which to draft and file an amended complaint after all their claims were dismissed.  *See doc. 18* at 20.  In light of Plaintiffs' undue delay in presenting the proposed claims and their repeated failure to do so, *see Foman*, 371 U.S. at 182, the Court in its discretion will deny that request.

---

[5] To the extent Plaintiffs also allege a conspiracy "to cover up the contamination of the Ruidoso River," *doc. 19-1* at ¶ 92, they have not shown a violation of their federal rights for the reasons explained in the Court's prior Memorandum Opinion and Order, *see doc. 18* at 11–20.  To state a § 1983 conspiracy claim, plaintiffs 'must plead . . . an actual deprivation of rights."  *Hinkle*, 962 F.3d at 1231 (quoting *Snell*, 920 F.2d at 701)).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Amend (*doc. 19*) is DENIED.  As

all claims were previously dismissed, *see doc. 18*, the Court will enter a separate final

order pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**